IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

        Plaintiff,

v.                                                 Case No. 25-2171-JWB

KANSAS DEPARTMENT FOR CHILDREN
AND FAMILIES, KANSAS ATTORNEY
GENERAL'S OFFICE, AMANDA MIRANDA,
and HEATHER DUNZ, in their individual and
official capacities,

        Defendants.

---

ANGELIINA LYNN LAWSON,

        Plaintiff,

v.                                                 Case No. 25-2251-JWB

ANDREW BOLTON, THE BOLTON LAW
FIRM, LLC, DARRELL ROBINSON, NEISHA
MISER, MALIQUE TAYLOR, JENNIFER
AGREE, DAN LIVINGSTON, LIVINGSTON
CENTER, LLC, DR. RODNEY MCNEAL, and
BOARD OF COUNTY COMMISSIONERS OF
ANDERSON COUNTY, KANSAS,

        Defendants.

## MEMORANDUM AND ORDER[1]

In Case No. 25-2171-JWB, these matters are before the court on Plaintiff's motion to certify interlocutory appeal under 28 U.S.C. § 1292(b) and motion to expedite ruling due to

---

[1] The two above-styled cases are not consolidated but are combined for the sake of judicial efficiency and due to the significant overlap between them. Accordingly, this order is applicable to both cases.

1

prejudice from stay and judicial inaction (Doc. 45); Motion to disqualify Judge John W. Broomes and Magistrate Judge Teresa J. James under 28 U.S.C. § 455 (Doc. 53); notice of judicial financial entanglement and renewed motion to disqualify under 28 U.S.C. § 455(a) and (b)(4) (Doc. 56); motion to strike successive motions to dismiss rule 12(g)(2) (Doc. 66); "motion to adjudicate fraud upon the court (dkt. 28) and suspend all dispositive motion practice pending certification" (Doc. 68); emergency motion to vacate retaliatory order striking Plaintiff's complaint (Doc. 69); and supplemental rule 60(d)(3) notice judicial bias, default manipulation, and censorship of jury trial and (Doc. 71). In Case No. 25-2251-JWB, these matters are before the court on Plaintiff's motion for protective reassignment under 28 U.S.C. §§ 292(b), 294 due to structural bias and ADA retaliation and objection to § 1915(e)(2) screening abuse (Doc. 15); motion for judicial disqualification, affidavit and protective reassignment under 28 U.S.C. §§ 455, 144, and 292(b) (Doc. 17); emergency order for temporary restraining order (Doc. 18); notice to preserve judicial independence and request for protective order against undue influence or interference (Doc. 23); motion to reassign case to out-of-district panel due to structural impairment and related enterprise litigation (Doc. 25); motion for judicial finding of fraud upon the court under rule 60(d)(3) (Doc. 26); and motion for rule 37(e) sanctions and certificate of enterprise-level evidence preservation violations (Doc. 27). All of these motions are DENIED for the reasons stated herein.

      Plaintiff has mercilessly carpet-bombed this court with filings in multiple cases, all largely centered on her dissatisfaction with child custody proceedings in Kansas state courts, as well as related activities by various state officials that, to one degree or another, stem from the underlying child custody battles. *See, e.g., Lawson v. Godderz et al.*, Case No. 25-1179-JWB; *Lawson v. Godderz et al.*, Case No. 25-2199-JWB; *Lawson v. Lawson*, Case No. 25-4045-JWB. Out of these various proceedings, a general pattern has emerged that Plaintiff is unwilling to accept the

decisions of duly authorized judicial officers and other state officials, and when such officials rule against her or take some action against her, she adds those officials to the ever-expanding conglomerate of those who, in one form or another, have become the targets of her litigation tactics. *See*, *e.g.*, Case No. 25-2171-JWB, Docs. 12, 13, 34, 41, 42, 47; Case No. 25-2199-JWB, Docs. 24, 28, 29, 31; Case No. 25-1179-JWB, Docs. 4, 5, 7, 10, 18, 19, 20, 21, 25, 27, 28, 34.[2] When things did not go well in her state cases, it appears that she turned to the federal courts in Kansas to seek relief; however, as the federal judges working on her multitude of filings have repeatedly explained to one degree or another, the law generally does not allow dissatisfied litigants in state court to seek review of those state proceedings in the lower federal courts, which is especially true in child custody proceedings. *See*, *e.g.*, *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1111 (10th Cir.2000) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)) ("[I]t might be appropriate for the federal courts to decline to hear a case involving 'elements of the domestic relationship,' even when divorce, alimony, or child custody is not strictly at issue."); *Fisher v. Lynch*, 531 F.Supp.2d 1253, 1267 (D. Kan. 2008) ("[C]hild custody proceedings are an especially delicate subject of state policy"); *Alfaro v. County of Arapahoe*, 766 F. App'x 657, 660 (10th Cir. 2019) (holding that the domestic-relations exception applied where the plaintiff asked the federal court to "scrutinize[ ]" the "legal merits" of "each order" in the state court divorce and child-custody proceedings); *Leathers v. Leathers*, No. 08–1213–WEB, 2010 WL 1936137, at *21 (D. Kan. May 13, 2010) (citing *Wigington v. McCarthy*, 124 F.3d 219 (10th Cir.1997)) ("[T]he domestic relations exception . . . divests the federal courts of power to issue divorce,

---

[2] The court recognizes that Plaintiff, in the instant case, has been granted a third opportunity to amend her claims against Defendants Miranda and Dunz as she previously failed to comply with this court's order in filing her amended complaint. (Doc. 67.) The court does this because it recognizes that these claims differ in kind compared to Plaintiff's other cases where—through a barrage of filings—she seeks for this court to review state child custody proceedings, which, as this court has stated ad nauseum, it cannot do under the circumstances she requests.

alimony, and child custody decrees."); *Vaughan v. Smithson*, 883 F.2d 63, 65 (10th Cir. 1989) ("If the federal court is called upon to decide those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, or the support obligations of a spouse or parent, then the domestic relations exception is applicable."); *Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1361 (D. Kan. 1994) (holding that the domestic relations exception should be applied when plaintiff asks the federal district court to make domestic relations decisions under the guise of civil rights claims). Instead, litigants like Plaintiff must generally seek relief up through the Kansas appellate courts—all of which are fully capable of hearing and resolving her claims that the proceedings below violated her federal rights. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."); *Moore v. Sims*, 442 U.S. 415, 425 (1979) (quoting *Juidice v. Vail*, 430 U.S. 327, 337 (1977)) (emphasis in original) ("[T]he federal court should not exert jurisdiction if the plaintiffs 'had an opportunity to present their federal claims in the state proceedings.'"). Moreover, Plaintiff bears the burden of showing the state court was an inadequate forum for her federal claims, of which she has continually failed to do. *Texaco, Inc.*, 481 U.S. at 14. Plaintiff has not made the necessary showing that the state court is an inadequate forum. Further, Kansas courts may consider constitutional challenges to child custody proceedings on appeal. *See Fisher*, 531 F. Supp. 2d at 1266 (explaining that Kansas Court of Appeals can, and often does, address constitutional challenges to child custody procedures). Then, if Plaintiff fails even at the Kansas Supreme Court, she can seek review of her federal issues with the United States Supreme Court.

In spite of repeated efforts to explain these issues to her, Plaintiff insists on pursuing her claims against state judges and officials involved in her state court cases here in the lower federal courts. As explained to her ad nauseum in prior orders of this court, THIS SHE CANNOT DO! Her relief, if any, lies through the state appellate courts. Why she refuses to follow the path required of her is unclear, but she has tried vehemently to be heard in the lower federal courts by crafting elaborate civil RICO claims and asserting other violations of her federal rights by state court judges based on their rulings in state court child custody cases.

Now the undersigned and Magistrate Judge James have drawn her ire for explaining these impediments to her cases in federal court, and once again she has filed multiple motions to, at least in part, disqualify said judges from hearing her case. *See*, *e.g.*, Case No. 25-2171-JWB, Docs. 53, 68, 69; Case No. 25-2251-JWB, Docs. 15, 17, 18, 23, 25. She makes the same arguments that have been rejected both at the trial court level and by the Tenth Circuit Court of Appeals. *See Lawson*, Case No. 25-2199-JWB at Doc. 33; *Lawson*, Case No. 25-1179-JWB at Docs. 33, 39. The motions are frivolous, vexatious, and need not be addressed yet again. They are accordingly DENIED for the reasons discussed and those previously explained.

Her second motion merits a little more of a response, but not much. (Case No. 25-2171-JWB, Doc. 56.) The gist of this motion is that Plaintiff, having scoured the undersigned's financial disclosures, concludes that disqualification is required because the undersigned maintains accounts at two banks with holdings that include state tax-free bond mutual funds. And since Defendant Kansas Department of Children and Families does business with those banks, Plaintiff argues that gives rise to a disqualifying conflict. However, under 28 U.S.C. § 455, the statute on which Plaintiff has relied over and over, a judge's ownership of mutual fund shares does not constitute a "financial interest" requiring recusal unless the judge participates in the management of the fund,

5

or the outcome of the litigation would substantially affect the value of the interest. Here, the undersigned holds only mutual fund shares through routine banking relationships; the Defendant's separate business dealings with these financial institutions creates no direct or indirect interest in this litigation. Plaintiff's attenuated theory—that any banking relationship shared between a judge and a state agency necessitates recusal—would disqualify virtually every federal judge from hearing cases involving state entities. The motion is DENIED.

As for Plaintiffs remaining motions (Case No. 25-2171-JWB, Docs. 45, 66, 71; Case No. 25-2251-JWB, Docs. 26, 27), they are wholly frivolous, vexations, and without merit. Accordingly, they are all DENIED. And to the extent they have been denied in previous orders by this court, they are denied for similar reasons.

THEREFORE, Docs. 45, 53, 56, 66, 68, 69, 71 in Case No. 25-2171-JWB and Docs. 15, 17, 18, 23, 25, 26, 27 in Case No. 25-2251-JWB are all DENIED for the reasons stated herein.

FURTHER, the Clerk is directed to file this order in both above-styled cases.

FURTHER, Plaintiff is put on notice that if she files another motion deemed to be frivolous and without merit, the court will summarily deny the motion by minute order. The court will also consider imposing filing restrictions and sanctions.

IT IS SO ORDERED. Dated this __24th___ day of November 2025.

__s/ John Broomes_____
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE